Michael WELSH, Appellant,

v.

**MENTOR MANAGEMENT, INC., and Division of Employment Security, Respondents.**

**No. ED 96785.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 24, 2012.

---

Brian B. Bendick, St. Louis, MO, for Appellant.

Arthur J. Neuhedel, Overland Park, KS, Shelly A. Kintzel, Jefferson City, MO, for Respondent.

ROBERT G. DOWD, JR., Presiding Judge.

Michael Welsh ("Claimant") appeals the decision of the Labor and Industrial Rela-

tions Commission ("the Commission") finding claimant was disqualified from unemployment benefits. The Commission determined that claimant was terminated for misconduct connected with work within the meaning of Section 288.050.2, RSMo Cum.Supp.2010. Claimant argues the Commission's determination that Claimant committed misconduct connected with work was not supported by sufficient competent evidence. We reverse and remand.

Claimant began working for Mentor Management, Inc. ("Employer") in June of 2009. In a performance review on June 21, 2010, Claimant was told that he "need[ed] to communicate with his supervisor before submitting e-mails to others, especially when it effects a change to existing program processes." Claimant signed this performance review. On July 2, 2010 after sending an email to the entire staff, Claimant was again told to speak directly to his supervisor and that it was inappropriate to send emails to the entire staff about any disagreements with things that took place in the office.

On September 30, 2010, there was a group meeting to discuss an upcoming internal audit of files on their customers, at which Claimant was present. The audit was to occur on October 28 or 29, 2010. The audit procedure where co-workers would audit other co-workers files or peer audits was presented by Claimant's supervisor. One of Claimant's co-workers suggested that each individual be allowed to audit their own files.

On October 25, 2010, Claimant sent an email to the entire staff recommending that each individual should audit their own files as suggested by his co-worker at the September 30, 2010 meeting. Claimant's supervisor responded to the email indicating that the audit would proceed in the manner that she had discussed at the meeting and there would be peer audits of the files. Claimant then sent a second email in response. This email was also sent to the entire staff. In the second email, Claimant again expressed concerns of the peer audit process.

Claimant was subsequently discharged from his employment with Employer in October 27, 2010. Thereafter, Claimant filed for unemployment benefits. Employer contested the claim.

A deputy determined Claimant was disqualified for unemployment benefits because Claimant was discharged for misconduct connected with his work. Claimant appealed to the Appeals Tribunal. The Appeals Tribunal held a telephone hearing. At the hearing, Claimant testified he sent the first email to the entire staff because he believed the audit process was open to discussion by the entire staff after it was discussed at the September 30, 2010 meeting. Claimant testified he did not believe a final decision regarding the audit process had been reached and he sent the email to make a further suggestion on how the audit should proceed. Claimant's supervisor admitted there was no written policy on how the audit would proceed, but stated she felt the issue was settled in the meeting. Claimant further testified that he inadvertently sent the second email to the entire staff and only intended to send that email to his supervisor. Although he signed his performance review, Claimant also testified that he did not specifically recall being counseled regarding the issue of sending emails to the entire staff during his performance review.

After the telephone hearing, the Appeals Tribunal reversed the deputy's determination and found Claimant was not disqualified for unemployment benefits. The Appeals Tribunal found that at most, Claimant's conduct of sending the first email to the entire staff was an act of poor judgment which did not rise to the level of

willful misconduct so as to disqualify Claimant from receiving unemployment benefits. The Appeals Tribunal also found Claimant's conduct of sending the second email to the entire staff was inadvertent and was not a deliberate or willful act of misconduct.

Employer filed an appeal with the Commission. The Commission reversed the Appeals Tribunal's decision finding Claimant was disqualified from receiving unemployment benefits because he was discharged for misconduct connected with work. The Commission decision was based solely on the first email. The Commission found Claimant was counseled on the specific issue of communicating with his supervisor before discussing matters with other employees. The Commission found Claimant was informed that he was to discuss issues of that nature with his manager individually. The Commission found Claimant's testimony that he did not recall being counseled regarding the issue when he sent the first email to be not credible.[1] Accordingly, the Commission held Claimant intentionally sent the first email and by doing so deliberately violated Employer's rules. Claimant now appeals.[2]

In his sole point, Claimant contends the Commission erred in determining Claimant committed misconduct connected with work because there was insufficient competent evidence to support the determination. We agree.

When we review a Commission order, "[t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210, RSMo 2000; see *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). We may modify, reverse, remand for rehearing, or set aside a decision of the Commission only on the following grounds and no other: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. Section 288.210, RSMo 2000.

Although we defer to the Commission on issues of fact when the findings are supported by competent and substantial evidence, we review questions of law de novo. *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App. E.D.2008). Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law. *Id.*

The Commission determined that claimant was discharged for misconduct connected with his work because Claimant "deliberately violated [E]mployer's rules and disregarded the standards of behavior which [E]mployer ha[d] the right to expect of its employees." Section 288.050.2, RSMo Cum.Supp.2010, provides that if there is a finding "that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits."

"Misconduct" is defined by Section 288.030.1(23), RSMo Cum.Supp.2010, as:

an act of wanton or willful disregard of the employer's interest, a deliberate vio-

---

1. The Commission made no other finding regarding the credibility of Claimant's other testimony.

2. The Division of Employment Security informed the court by letter that it did not intend to file a respondent's brief in this matter.

lation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

■ Generally, an employee bears the burden of proving eligibility for unemployment compensation benefits. *Frisella*, 269 S.W.3d at 899. However, when an employer claims an employee was discharged for misconduct, the burden shifts to the employer to prove by a preponderance of the evidence that the employee willfully violated the employer's rules or standards. *Id.*

A violation of a reasonable work rule can constitute misconduct. *Tenge v. Washington Group Intern., Inc.*, 333 S.W.3d 492, 496 (Mo.App. E.D.2011). However, a violation of a work rule is not dispositive proof of misconduct connected with work. *Id.* " 'Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct.' " *Id.* (quoting *McClelland v. Hogan Personnel, LLC*, 116 S.W.3d 660, 665 (Mo.App. W.D.2003)).

■ The initial requirement is that the employee in some way willfully violated the rules and standards of the employer. *Tenge*, 333 S.W.3d at 497. To willfully disregard employer's interests, a claimant must be aware of the requirement and knowingly or consciously violate it. *Id.* "There is a vast distinction between the violation of an employer's work rule, which would justify the discharge of the employee, and a willful, wanton, or deliberate violation of such rule, which would warrant a determination of misconduct and disqualify the claimant for unemployment-compensation benefits." *McClelland*, 116 S.W.3d at 665. Without evidence that an employee deliberately or purposefully violated a workplace rule, the employee cannot properly be found to have committed an act of misconduct. *Tenge*, 333 S.W.3d at 497; *Frisella*, 269 S.W.3d at 899.

■ The record shows Claimant was counseled about communicating with his supervisor before sending emails to the entire staff and the Commission found Claimant's testimony on this issue not to be credible. However, the fact that Claimant was counseled about emailing the entire staff previously, without more, is not determinative of willfulness. See *Tenge*, 333 S.W.3d at 497("[t]he facts that the reporting policy was in writing and claimant had received a prior written warning for violating it are not, without more, determinative of willfulness.") Employer must establish that the violation of the policy was deliberate and knowing. *Id.*

Claimant asserts he did not deliberately or willfully violate the policy. Claimant's assertion is supported by the record where the Commission made no other credibility finding as to Claimant's testimony regarding his intent in sending the first email. Claimant testified that during the September 30, 2010 meeting he believed the procedures for conducting the audit were an open topic of discussion for the staff. Claimant testified that the meeting ended without a final decision on the process that would be used. Although she believed a decision was made at the meeting, Claimant's supervisor agreed that no written policy on how the audit process was to be conducted was created. Claimant testified he sent the email to the entire staff because "it was a team function, and the team had met to discuss the audit to begin with." Claimant testified his intention in sending the first email was to offer a sug-

gestion on the audit topic. At most, the evidence shows a mere lack of judgment on Claimant's part in sending the first email to the entire staff. This conduct may have been sufficient to discharge Claimant from employment, but it does not rise to the level of willful or deliberate conduct sufficient to deny him unemployment benefits.[3]

Thus, the Commission's decision finding Claimant committed misconduct connected with work is not supported by sufficient competent evidence. Point one is granted.

The decision of the Commission is reversed and the case is remanded.

MARY K. HOFF, J. and SHERRI B. SULLIVAN, J., concur.

3. Because the Commission based its decision solely on the first email and the Commission

made no findings regarding the second email, we do not address this second email.